IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| JATINDER PAL SINGH, | : | Case No. 1:26-cv-130 |
| | : | |
| Petitioner, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| KEVIN RAYCRAFT, et al., | : | |
| | : | |
| Respondents. | : | |

## ORDER AND OPINION

This matter is before the Court on Petitioner Jatinder Pal Singh's Petition for Writ of Habeas Corpus (Doc. 1). Respondents filed a Return of Writ (Doc. 7), to which Petitioner filed a Reply in Support (Doc. 8). This matter is therefore ripe for the Court's review. For the reasons explained below, Petitioner's Petition (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

## FACTS AS ALLEGED

Petitioner Jatinder Pal Singh is a citizen of India who has resided in the United States since 2023 after fleeing India. (Petition, Doc. 1, ¶ 1.) Before his detention, Petitioner worked as a truck driver; he had no criminal history prior to his arrest. (*Id.* at ¶ 2.) He applied for asylum on March 29, 2023, and was arrested on May 20, 2025. (*Id.* at ¶ 1.) Petitioner moved for bond in June 2025, which was denied based on his risk of flight. (*Id.* at ¶¶ 1-2.) Petitioner reserved the right to appeal this bond determination but did not file an appeal. (*See* Return of Writ, Doc. 7, Pg. ID 21; Bond Order, Doc. 7-7, Ex. 7.) Then, on

October 30, 2025, the Immigration Judge denied Petitioner's asylum application and ordered him removed. (Asylum Order, Doc. 7-8, Ex. 8.) On November 7, 2025, Petitioner appealed the Immigration Judge's decision to deny his asylum application. (Notice of Appeal, Doc. 7-9, Ex. 9; Petition, Doc. 1, ¶ 1.) Petitioner has been detained for over nine months in the Butler County Jail in Hamilton, Ohio. (Petition, Doc. 1, ¶ 24.)

## PROCEDURAL POSTURE

On February 5, 2026, Petitioner filed a Petition for Writ of Habeas Corpus (Doc. 1) against the following Respondents in their official capacities: Kevin Raycraft, Director of the Detroit Field Office of U.S. Immigration and Customs Enforcement; Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States. (Petition, Doc. 1, ¶¶ 12-14.) The Court clarifies that, while Petitioner originally brought claims against Kristi Noem, Markwayne Mullin is now the Secretary of DHS; similarly, while Petitioner brought claims against Pamela Bondi, Todd Blanche is now the acting Attorney General. *See* Fed. R. Civ. P. 25(d).

Petitioner brings a single claim against Respondents: violation of his Fifth Amendment right to due process. (Petition, Doc. 1, ¶¶ 30-32.) This cause of action alleges that both his detention without a bond hearing and the length of his detention, with no foreseeable end in sight, violate his Fifth Amendment rights. (*Id.*)

## LAW & ANALYSIS

### I. Subject Matter Jurisdiction

The fundamental question of subject matter jurisdiction must precede any analysis of the merits on this matter. As federal courts are "courts of limited jurisdiction" and

"possess only that power authorized by Constitution and statute," they "have an independent obligation to determine whether subject-matter jurisdiction exists." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Petitioner asserts that this Court possesses jurisdiction to hear this matter because it involves: (1) habeas review (28 U.S.C. § 2241), (2) federal question jurisdiction (28 U.S.C. § 1331), (3) the Suspension Clause (U.S. Const. art. I, § 9, cl. 2), and (4) the Declaratory Judgment Act (28 U.S.C. § 2201). (Petition, Doc. 1, ¶¶ 4-6.)

To begin, in enacting 8 U.S.C. § 1252(g) through the REAL ID Act, Congress limited the jurisdiction of federal courts as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). "In the REAL ID Act, Congress decided that, as a matter of public policy, [federal courts] do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order." *Rranxburgaj v. Wolf*, 825 F. App'x 278, 283 (6th Cir. 2020). This holds true "whether or not [federal courts] agree with ICE's decision to execute [a petitioner's] removal order." *Id.* Similarly, given § 1252(g)'s language as to commencing proceedings and adjudicating cases, this jurisdictional bar also extends to situations in which a petitioner is notified that he or she must "voluntarily depart or face deportation." *Ene v. Phillips*, 99 F. App'x 642, 643 (6th Cir. 2004).

3

The plain language of 8 U.S.C. § 1252(g) therefore limits jurisdiction as it relates to claims arising from the commencement of removal proceedings, adjudication of such cases, or the execution of removal orders — even when jurisdiction would otherwise be proper under federal question jurisdiction, mandamus jurisdiction, or "any other provision of law." *See Elgharib v. Napolitano*, 600 F.3d 597, 607 (6th Cir. 2010); *see also Karki, et al. v. Jones, et al.*, No. 25-CV-281, 2025 WL 1638070, at *7 (S.D. Ohio June 9, 2025). By its terms, this statutory limitation also applies to habeas relief under 28 U.S.C. § 2241, which would typically provide jurisdiction over cases where an alien is held in custody in violation of the Constitution or the laws of the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). That said, certain applications of § 1252(g) may potentially cause tension with the Suspension Clause. As the Framers enshrined in the Constitution: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. In order to successfully contest the constitutionality of this statute on Suspension Clause grounds, two things must be true: (1) the petitioner must be seeking "core" habeas relief; and (2) there is no adequate substitute to effectively test petitioner's detention. *Hamama v. Adducci*, 912 F.3d 869, 875–76 (6th Cir. 2018).

In approaching this jurisdictional question, the Court notes that Petitioner's claims do not seek relief from removal or even a redetermination of his admissibility. (*See* Petition, Doc. 1, ¶¶ 30-32) At bottom, his claims solely challenge his detention without a bond hearing in violation of his Fifth Amendment rights and the Immigration and Nationality Act ("INA"), as well as the length of his detention. (*Id.*) The Court finds that

4

these claims sound in core habeas relief and do not fall within the scope of § 1252(g). In *Hamama*, the Sixth Circuit confirmed that the "district court's jurisdiction over the detention-based claims [was] independent of its jurisdiction over the removal-based claims." *Hamama*, 912 F.3d at 877; *see also Moussa v. Jenifer*, 389 F.3d 550, 554 (6th Cir. 2004); *Zadvydas v. Davis*, 533 U.S. 678 (2001). Indeed, "[f]or over 100 years, habeas corpus has been recognized as the vehicle through which noncitizens may challenge the fact of their detention." *Malam v. Adducci*, 452 F. Supp. 3d 643, 649 (E.D. Mich. 2020) (citing *Chin Yow v. U.S.*, 208 U.S. 8, 13 (1908)). Here, Petitioner argues that his detention without a bond hearing is unlawful; in other words, he challenges the fact of his detention, independent from his removal. Accordingly, § 1252(g) does not inhibit this Court from reviewing such detention-based claims. *See, e.g., Zhen v. Doe*, No. 3:25-CV-1507, 2025 WL 2258586, at *2–4 (N.D. Ohio Aug. 7, 2025); *Resendiz v. Noem*, No. 4:25-CV-159, 2025 WL 3527284, at *2 (W.D. Ky. Dec. 9, 2025). Having determined that subject matter jurisdiction exists, the Court will now proceed to the merits of the Petition.

## II.     Merits of Petitioner's Claims

The Court begins with Petitioner's argument that his detention without a bond hearing violates his Fifth Amendment rights. 28 U.S.C. § 2243 requires a court to issue a writ or order the respondent to show cause as to why a writ should not issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. The statute also "requires an initial screening of a petition" in which "a court accepts as true the allegations in the petition and construes them in favor of the petitioner." *Espinoza v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No.

5

4:25-CV-2107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025) (citing *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011)). "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court," then the court must dismiss the petition. Rule 4, Rules Governing Section 2254 Cases (applicable to petitions arising under § 2241).

The Court turns to the preliminary question of exhaustion. The well-established doctrine of exhaustion of administrative remedies instructs that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1969) (quotation omitted). Exhaustion serves several commendable goals: promoting judicial efficiency, allowing agencies to weigh in on the question as designed through the statutory or regulatory regime, providing an opportunity for self-correction, and producing a useful record. *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013); *Wheeler v. Williams*, No. 20-4037, 2021 WL 6071501, at *2 (6th Cir. Dec. 20, 2021). Specifically, exhaustion often takes one of three forms: statutory exhaustion, regulation-based exhaustion, or—as in "most contexts"—prudential exhaustion. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019); *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994). While statutory exhaustion may be understood as a mandate because the need to exhaust is explicitly spelled out by statute, "sound judicial discretion" otherwise governs when courts decide whether to apply prudential exhaustion. *Shearson*, 725 F.3d at 593 (quotation omitted); *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "[C]ongressional intent and any applicable statutory scheme" inform judicial discretion on this point. *Id.* at 593–94 (quotation omitted).

6

No relevant statute commands administrative exhaustion within this context, so the Court's inquiry focuses upon prudential exhaustion. *See Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Sec.,* No. 25-CV-13128, 2025 WL 3089756, at *3 (E.D. Mich. Nov. 5, 2025). As sister district courts have widely recognized while recently wrestling with cases like this one, "[t]he Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft,* No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (collecting cases). And, while the Sixth Circuit "has not formally adopted a standard for determining when prudential exhaustion applies" in such situations, the Ninth Circuit has promulgated a relevant test. *Lopez-Campos v. Raycraft,* No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Under this test, exhaustion may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007). If prudential exhaustion is appropriate under this test and a petitioner does not exhaust all administrative remedies, a district court should generally either dismiss the petition without prejudice or stay the proceedings until the petitioner exhausts all remedies. *Espinosa,* 2025 WL 2878173, at *2 (citing *Leonardo v. Crawford,* 646 F.3d 1157, 1160 (9th Cir. 2011)).

The Sixth Circuit has cited the Ninth Circuit's approach in the context of challenging bond determinations by immigration courts, albeit in a brief, unpublished order. *See Rabi v. Sessions*, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1 (6th Cir. July 16, 2018) (citing *Leonardo*, 646 F.3d at 1160). Additionally, several other district courts throughout the Sixth Circuit have addressed this issue by applying the Ninth Circuit's test. *See, e.g., Mendoza v. Raycraft*, No. 4:25-CV-2183, 2025 WL 3157796, at *9 (N.D. Ohio Nov. 12, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-CV-1621, 2025 WL 2444114, at *8–9 (N.D. Ohio Aug. 25, 2025); *Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530 (N.D. Ohio 2025); *Espinoza*, 2025 WL 2878173, at *2; *Lopez-Campos*, 2025 WL 2496379, at *4; *Orellana v. Noem*, No. 4:25-CV-112, 2025 WL 3006763, at *2 (W.D. Ky. Oct. 27, 2025).

Finding this framework persuasive under the circumstances, the Court will apply the Ninth Circuit's test for prudential exhaustion. As the Court adjudicates these cases and controversies, it is mindful of the separation of powers doctrine at play. *See City of New York v. Slater*, 145 F.3d 568, 570 (2d Cir. 1998) (per curiam) ("In general, a party is required to exhaust its administrative remedies before seeking judicial review of an agency decision, 'in part because of concerns for separation of powers (i.e., the need to limit judicial interference in the agency process) and the need to conserve judicial resources.'" (quoting *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996))); *Tecum Pastor v. Dir. of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-CV-2761, ___ F. Supp. 3d ___, 2025 WL 3746495, at *3 (N.D. Ohio Dec. 24, 2025) ("Given the narrow space where a district court may exercise jurisdiction, prudential principles of exhaustion counsel that

a petitioner pursue his administrative remedies to a final judgment from the Board of Immigration Appeals before seeking a writ of habeas corpus."). For the reasons set forth below, and in *Bartolon v. Bondi*, ___ F. Supp. 3d ___, 2025 WL 3674604, at *7-9 (S.D. Ohio Dec. 18, 2025), the Court finds that the three *Puga* factors weigh in favor of requiring Petitioner to exhaust his administrative remedies.

Beginning with the first *Puga* factor, the Court finds that the Board of Immigration Appeal's expertise makes agency consideration beneficial to generate a proper record and reach a proper decision. While an agency's interpretation of a statute "cannot bind a court," agency expertise "has always been one of the factors which may give an Executive Branch interpretation particular power to persuade, if lacking power to control." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024) (quotation omitted) (citing *Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Relations Auth.*, 464 U.S. 89, 98 n.8 (1983); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). As discussed above, Petitioner challenges his detention before this Court, and the record is devoid of any appeal filed through the immigration system. "[A]ny determination regarding detention here turns on interpretation and application of the governing removal regime." *Villalta*, 794 F. Supp. 3d at 531. "In the first instance, such review should proceed before the Board of Immigration Appeals to apply its experience and expertise without judicial interference." *Id.* (quotation omitted). A "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003).

The second *Puga* factor also weighs in favor of requiring exhaustion because the Court "has concerns that relaxing the exhaustion requirement would encourage the deliberate bypass of the administrative scheme in favor of what may be perceived as a potentially more favorable and/or timely reviewing body, i.e., federal court." *Mendoza*, 2025 WL 3157796, at *10. Petitioner's apparent attempt to sidestep the BIA appeals process in favor of habeas review highlights the need for an exhaustion requirement here to protect agency authority, limit interference with agency affairs, and promote judicial efficiency. *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003), *as amended* (July 24, 2003).

Finally, the Court finds that the third *Puga* factor weighs in favor of requiring exhaustion, as administrative review of the bond denials here would allow the agency to correct its own alleged mistakes and alleviate the need for judicial review. Petitioner does not contest that the BIA could provide the same relief it seeks before this Court. *See Pastor*, 2025 WL 3746495, at *3 (explaining that "a constitutional challenge to detention pending removal and entitlement to a bond hearing pending removal collapse into analysis of the statutory and regulatory regime"). "Requiring exhaustion under these circumstances therefore promotes the main purposes of exhaustion, i.e., it protects the BIA's authority by allowing it the opportunity to correct its own mistakes and, further, promotes judicial efficiency by resolving potential issues and potentially obviating the need for judicial review." *Mendoza*, 2025 WL 3157796, at *10.

Although the *Puga* factors weigh in favor of requiring exhaustion, a court may nevertheless waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile

10

gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). But, at this point, it is "speculative to make any assumptions regarding when the BIA will resolve" a potential bond appeal by Petitioner, as "[t]here is insufficient information before the Court at this time to demonstrate that exhaustion of Petitioner['s] administrative remedies will be unduly prolonged." *Mendoza*, 2025 WL 3157796, at *13. Further, even if the BIA appeals process were to create additional delay, the Court has insufficient evidence before it to conclude that "the risk of irreparable harm to Petitioner[] outweighs the importance of requiring exhaustion under the circumstances presented." *Id.*

Petitioner's failure to timely file a notice of appeal with the BIA regarding his bond denial is also insufficient to deem exhaustion futile, as "exhaustion may not be achieved through a litigant's procedural default of his or her available remedies." *Laing*, 370 F.3d at 998. Moreover, waiver is inappropriate here because, if the exhaustion requirement were waived in every case where a party failed to timely file for an administrative appeal, then "any party could obtain judicial review of initial agency actions simply by waiting for the administrative appeal period to run and then filing an action in district court." *Stock W. Corp. v. Lujan*, 982 F.2d 1389, 1394 (9th Cir. 1993).

Petitioner further argues that exhaustion would be futile given the BIA's decision in *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025). (Reply, Doc. 8, Pg. ID 71-72.) Such futility must be "clear and positive," as a petitioner "must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) (quotation

omitted). The Court would note that a flurry of litigation has ensued since *Matter of Hurtado*, including a class action ruling in *Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). And, "even where there is a high probability of denial of a petitioner's appeal of an Immigration Judge's bond decision, such a probability does not weigh in favor of waiving exhaustion." *Espinoza*, 2025 WL 2878173, at *3 (quotation omitted); *see also Beharry*, 329 F.3d at 62 (explaining that merely because an "argument would likely have failed is not tantamount to stating that it would have been futile to raise it").

Courts have discretion to waive the exhaustion requirement and rule on a matter when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). While some courts in this circuit have chosen to waive exhaustion because of the delay caused by a potentially lengthy appeal process, such a decision remains in the Court's discretion. *See Alvarez-Lopez v. U.S. Dep't of Homeland Sec.*, No. 25-CV-13098, 2025 WL 3525956, at *2 (E.D. Mich. Dec. 9, 2025) (surveying intra-circuit split on the issue). And, the Court notes that, in many of those cases, the district courts supported their decision to waive exhaustion with both a finding of futility and undue hardship, not just the latter. By comparison, the Court finds here that Petitioner has not made a showing of futility. Absent binding precedent to the contrary, this Court therefore declines to find that the risk of delay alone warrants a waiver of exhaustion.

Next, the Court addresses Petitioner's claim that his prolonged detention, with no foreseeable removal, violates his Fifth Amendment rights. Petitioner argues that,

12

assuming his detention is proper, the length of the detention has exceeded a reasonable time. (Petition, Doc. 1, ¶ 31; Reply, Doc. 8, Pg. ID 72-74.) To be sure, 8 U.S.C. § 1231(a)(6) permits the detention of certain aliens beyond the initial 90-day statutory "removal period" in order to effectuate removal. Rather than authorizing "indefinite detention," this statute has been read to "limit[ ] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). The Supreme Court anticipated that determining a "reasonably necessary" period in any particular case, while still affording the executive branch the appropriate "leeway" in this field, "will often call for difficult judgments." *Id.* at 699-701. So, the Supreme Court handed down a general rule: a 6-month period of detention is presumptively reasonable. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Supreme Court later clarified this holding, noting that, for the petitioners in *Zadvydas*, deportation was "no longer practically attainable," making detention that lasted longer than six months unconstitutional. *Demore v. Kim*, 538 U.S. 510, 527 (2003) (quoting *Zadvydas*, 533 U.S. at 690) (cleaned up). Meanwhile, the petitioners in *Demore* sought release "pending their removal proceedings." *Id.* at 528. Accordingly, "such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings." *Id.*

While Petitioner argues that there is no end in sight for his detention (Petition, Doc. 1, ¶ 31), Respondents say this is not so (Return of Writ, Doc. 7, Pg. ID 32-33). As

Respondents state, Petitioner is detained "for the limited purpose of removal proceedings and determining his removability." (Return of Writ, Doc. 7, Pg. ID 33.) Petitioner had been ordered removed, but he appealed that decision; his appeal is the reason he is still in custody. (*Id.*) The Court agrees with Respondents' reasoning and finds *Demore* instructive. There, the petitioner had spent six months in detention awaiting his removal hearing. *Demore*, 538 U.S. at 530-31, n.15. However, and importantly, the Court pointed out that, while his initial hearing was scheduled for five months after his detention began, the petitioner himself "had requested a continuance of his removal hearing," which extended his detention beyond the six-month reasonableness period. *Id.* Accordingly, the Supreme Court held that his continued detention pending the outcome of his hearing "is a constitutionally permissible part of [the removal] process." *Id.* (collecting cases). In fact, the Sixth Circuit reiterated that the same is true for removals delayed because of an appeal. *See Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020). In *Martinez*, the court upheld that a petitioner's removal remained reasonably foreseeable despite a delay caused by the appeal, finding that, if the appeal was denied, "nothing should impede the government from removing him." *Id.* Thus, the petitioner was not in a "removable-but-unremovable limbo," as, once his appeals are resolved, he will be "subject to nearly immediate removal." *Id.*

Here, the Immigration Court ordered Petitioner's removal on October 30, 2025, roughly five months after his detention began, but Petitioner has since extended removal proceedings by appealing the denial of his asylum application. (*See* Petition, Doc. 1, ¶ 1; Return of Writ, Doc. 7, Pg. ID 21.) As Respondents state, "resolution one way or another

14

is forthcoming." (Return of Writ, Doc. 7, Pg. ID 32.) While the appeal may take an extended period of time for resolution, this potentially lengthy process does not render Petitioner's removal practically unattainable. *See Zadvydas*, 510 U.S. at 690; *Hamama v. Adducci*, 285 F. Supp. 3d 997, 1007 ("the end point of the legal process is reasonably foreseeable"), *rev'd on other grounds*, 912 F.3d 869 (6th Cir. 2018); *Martinez*, 968 F.3d at 565. Detention here is not "indefinite and potentially permanent," since Petitioner's removability will be decided once his appeal is resolved. *See Demore*, 538 U.S. at 528 (quoting *Zadvydas*, 533 U.S. at 690-91). Accordingly, Petitioner's detention serves the purpose of preventing Petitioner from fleeing pending the resolution of his appeal; this detention is therefore a constitutional part of the removal process. *See Demore*, 538 U.S. at 528-31.

## CONCLUSION

For the foregoing reasons, the Court declines to review Petitioner's bond claims due to his failure to exhaust administrative remedies and further finds that Petitioner's length-of-detention claim lacks merit. Accordingly, the Court **ORDERS** the following:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**; and

2) This matter is **TERMINATED** from the Court's docket.

   **IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND